UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARY PAHMEIER, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MARION COMMUNITY SCHOOLS, )<br>SUPERINTENDENT ANDREW M. NIXON, )<br>and HUMAN RESOURCES DIRECTOR )<br>KIM KNOTT, )<br>)<br>    Defendant. ) | CAUSE NO.: 1:04-CV-365-TS |

**MEMORANDUM OF DECISION AND ORDER**

On September 19, 2006, the Defendants, Marion Community Schools, Superintendent Andrew M. Nixon, and Human Resources Director Kim Knott, moved for summary judgment on all the Plaintiff's claims: violation of First Amendment right to free speech, violation of Age Discrimination in Employment Act (ADEA), breach of contract, intentional infliction of emotional distress, and violation of the Family and Medical Leave Act. On March 17, 2006, the Court granted the Defendants' motion on all claims except the Plaintiff's ADEA claim.

During the March 20 pretrial conference, the Court allowed the parties to submit additional briefs on the Plaintiff's ADEA claim and to elaborate on whether the Plaintiff was an "employee" as that word is defined by the ADEA, and as a result, whether she was protected under the ADEA.[1] Having considered this issue again, the Court's position remains unchanged, and the Defendants' motion to reconsider the Court's ruling on their motion for summary judgment will be denied.

---

[1] The Defendants also requested oral argument on this issue. However, after an examination of the briefs, the Court concludes that the parties' contentions can be resolved on the submitted briefs.

**A.  The Parties' Contentions**

The Plaintiff is a former principal within the Marion Community Schools system. She was fired from her position in 2003, and she believes that the termination was related to her age (she is sixty-nine years old). The Defendants deny that age played a factor in firing the Plaintiff and, in the alternative, argue that the she is not covered by the ADEA. Since a  genuine issues of fact exists about the basis for the Plaintiff's termination, as stated in the Court's earlier order, (*see* DE 64), the Court will address only the second proposition the Defendants make: whether the Plaintiff was covered by the ADEA.

The Defendants argue that the Plaintiff's ADEA claim must fail because, as an official with policymaking powers who was appointed by the school board , she is not protected under that statute. They argue that in Indiana a school board's authority to employ, contract, and to discharge principals is its actual authority to make appointments as that word is understood within the Act. They submit that "an appointee is just a short-hand way of describing the people by whom [the Plaintiff] was hired—elected officials—as opposed to the people by whom most employees in both the public and private sectors are hired—persons not holding elected office." (Def. Resp. at 5, DE 70.) The Defendant's also argue that she admitted that she was such an appointee during her deposition when she answered affirmatively two questions: "There was a Board decision wasn't there, regarding your appointment at Justice?" and "Does that document reflect that, in fact, the Board made the decision to appoint you . . . as an interim [principal] at the Justice Middle School?"

The Plaintiff contends that, according to Indiana statutes, the school board had no power to make appointments contemplated in the ADEA exception. She also objects to the Defendants' characterization of her deposition answers as admissions that she was indeed appointed by the board

2

to the principal's position as that term is applied under the ADEA.

**B. Discussion**

    The ADEA covers employees but

> . . . the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

29 U.S.C. § 630(f). While otherwise clear on its face, the statute does not expressly state who must make an appointment for the "appointee" exception to apply. The Seventh Circuit has not yet considered this issue but several district courts in the circuit have adopted the Second Circuit's approach in *Tranello v. Frey*, 962 F.2d 244 (2nd Cir. 1992), which held that to be exempt from the ADEA an appointee must have been appointed by an elected official. *See Braaksma v. Wells Cmty. Hosp.*, 98 F. Supp. 2d 1026, 1029 (N.D. Ind. 2000) ("In conclusion, this court agrees with *Tranello* . . . that the exception in section 630(f) only applies when the appointee is appointed by an elected official."); *O'Neill v. Ind. Comm'n on Pub. Records*, 149 F. Supp. 2d 582, 588 (S.D. Ind. 2001) ("[T]he court finds persuasive the Second Circuit's decision in *Tranello v. Frey*.").

    In *Tranello*, the court faced the question of whether a former deputy prosecutor, who had been appointed by a county attorney, who in turn had been appointed by a county executive, fell within the ADEA's exception for appointees. The court decided that the exception did not apply: "[s]ection 630(f) 'excepts two broad groups [of employees] from the protection of [ADEA]. The first group is composed of elected officials of a state or its political subdivisions; the second group is composed of certain, though not all, of the *persons appointed by those elected officials*.'" *Id*. (citing

3

*EEOC v. Vermont*, 904 F.2d 794, 797 (2nd Cir. 1990), *overruled on other grounds by Gregory v. Ashcroft*, 501 U.S. 452 (1991)). It reached this conclusion after thoroughly examining the language of the statute and its legislative history:

> This interpretation is supported by the language of the statute. The statute exempts "[i] any person elected to public office . . . , or [ii] any person chosen by such [elected] officer to be on such officer's personal staff, or [iii] an appointee on the policymaking level or [iv] an immediate advisor with respect to . . . powers of the office." 29 U.S.C. § 630(f). Categories [i], [ii] and [iv] plainly contemplate exemption for persons with a direct relationship to an elected official. While category [iii] does not contain clear language specifically stating that an appointee must be directly appointed by an elected official to fall within section 630(f), the placement of category [iii] in the middle of a statute primarily exempting elected officials from ADEA coverage strongly indicates that this provision must be read to require appointment by an elected official.
>
> There is little legislative history helpful to interpreting section 630(f). The definition of "employee" found in ADEA, however, was patterned after the virtually identical provision contained in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f), and we therefore look to the legislative history of that provision for guidance. The legislative history of § 2000e(f) lends further support to our conclusion. The Joint Explanatory Statement submitted to the House and Senate interprets the language that was ultimately adopted as exempting "elected officials and members of their personal staffs, and persons appointed by such elected officials as advisors or to policymaking positions. . . ." The Statement also provides that the exemption should be "narrowly construed."

*Tranello*, 962 F.2d at 249–50 (citations omitted).

This Court, too, finds *Tranello*'s reasoning persuasive and recognizes that, under section 630(f), the phrase "an appointee on the policymaking level" corresponds to an elected official who designates such person to serve at the elected official's will.

In light of this reading of section 630(f), the Plaintiff was not the kind of appointee that the ADEA contemplated to exclude. Both the Indiana statutes and actual dealings between the parties attest to that. In Indiana, school boards do not appoint principles to serve at their pleasure. Rather, the school boards employ and discharge principals just as they employ and discharge the persons

4

that principals supervise—coaches, janitors, teachers aids, etc.:

> In carrying out the school purposes of a school corporation, the governing body acting on the school corporation's behalf has the following specific powers:
> . . .
> (8) To:
> (A) Employ, contract for, and discharge superintendents, supervisors, principals, teachers, librarians, athletic coaches . . . , business managers, superintendents of buildings and grounds, janitors, engineers, architects, physicians, dentists, nurses, accountants, teacher aides performing noninstructional duties, educational and other professional consultants, data processing and computer service for school purposes . . . .

Ind. Code 20-26-5-4(8)(A).

> In addition, school principals may not be discharged without a clearly specified notice:
>
> Before February 1 of the year during which the contract of . . . a principal . . . is due to expire, the governing body of the school corporation, or an employee at the direction of the governing body, shall give written notice of renewal or refusal to renew the individual's contract for the ensuing school year.
>
> If notice is not given before February 1 of the year during which the contract is due to expire, the contract then in force shall be reinstated only for the ensuing school year.

Ind. Code § 20-28-8-3. Such statutory strictures for school principals are radically different from the protections given to political appointees, who obtain their positions by the decrees of elected officials, and who can be removed by subsequent decrees if the political tide changes or voters' patience begins to wear out.

In fact, the Plaintiff worked under a contract, and, presumably, in compliance with Indiana Code § 20-28-8-3, on November 26, 2003, the Superintendent sent the Plaintiff a preliminary notice that her contract would not be renewed. (*See* Def. Ex. DD, DE 66-5.) He wrote: "Please be advised that, prior to the Board's decision on nonrenewal of your contract, you have *a right* to a private conference with the superintendent . . . . Additionally, you have *a right* to a private conference with

5

the school board . . . after the private conference with the superintendent." (*Id*.) (emphasis added). This language further indicates that the Plaintiff did not merely serve at the will of the school board but had rights, in addition to those granted by the contract, that were protected by due process and not available to political appointees.

At most, the Plaintiff could be said to have been appointed by the Superintendent, *cf. Beeching v. Levee*, 764 N.E.2d 669, 679 (Ind. Ct. App. 2002) (observing that "[i]n most, if not all Indiana public school systems, building principals are appointed by system superintendents and ratified by vote of the system's school board"), to whom she was accountable in all respects. Her job description explicitly states that she "reports directly to the Superintendent for all operations," (Def. Ex. 3 at 1), "assumes responsibility for the preparation and presentation of fiscal reports to the Superintendent," (*Id*. at 7), and "brings to the attention of the Superintendent, for consultation, those matters which are of concern to the school that may adversely influence public or professional relations," (*Id*.). But, since the superintendent was not an elected official, even if the Plaintiff was his appointee, she would not have been an appointee outside the scope of the ADEA's protection.

Under these circumstances, it's futile for the Defendants to argue that the Plaintiff admitted that she was appointed to her position by the school board, let alone that she was an appointee within the meaning of the ADEA. Although the Court does not consider the Plaintiff's affirmative answers to the questions about her "appointment" as admission of anything more than that she occupied a principal's office, her answers cannot change the governmental structure set out in Indiana statutes and cannot erase the parties actual conduct.

## CONCLUSION

Since the "appointee" exception does not apply to the Plaintiff, she is protected under the

6

ADEA and can proceed with her age discrimination claim. Accordingly, the Court denies the Defendants' motion to reconsider its ruling on their motion for summary judgment [DE 66] is denied. The Court also denies the Defendants' motion for a hearing on their motion to reconsider [DE 69].

SO ORDERED on May 1, 2006.

    S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT